## UNITED STATES FIRE INS CO v CUCERO

Ohio Appeals, 7th Dist, Mahoning Co
Decided Oct 17, 1930

Harrington, DeFord, Huxley & Smith, Youngstown, for Ins Co.

Morgan & Maiden, Youngstown, for Cucero.

MAUCK, J, (4th Dist) sitting in place of POLLOCK, J.

**ROBERTS, J.**

The issues may be simplified somewhat by referring to the petition in error, and I will read some of the grounds enumerated:

"1. The verdict of the jury was contrary to and against the clear and decided weight of the evidence.

2. The verdict of the jury was contrary to law.

3. The verdict of the jury was excessive.

4. There was insufficient evidence to support the verdict.

5. Error on the part of the trial court in admitting evidence over the objection of the defendant, to which the defendant duly excepted.

6. Error on the part of the trial court in failing to direct a verdict at the close of plaintiff's evidence.

7. Error on the part of the trial court in failing to direct a verdict at the close of all the evidence in the case".

Omitting some for which nothing seems to be claimed.

"10. Error on the part of the trial court in refusing to permit the jury to view the premises."

These alleged grounds of error may be classified under three heads, one which includes the most of them as to the weight of the evidence, whether the verdict was against the manifest weight of the evidence, and another error on the part of the trial court, as claimed, in refusing to permit a view of the premises, and a third ground of improper admission of evidence, which was claimed to have not been competent.

The jury having found in favor of the plaintiff so far as false swearing is concerned, we need give that proposition no further consideration. The important issue, and which is raised by quite a number of these alleged grounds of error, is predicated upon the weight of the evidence, and involves a determination as to whether the verdict was against the manifest weight of the evidence, and this evidence relates to the extent of the loss in this fire.

The plaintiffs below called three witnesses in addition to the plaintiff himself. These witnesses were eivdently Italians, from their names. They were building contractors and carpenters, from their testimony, of considerable experience. Their testi-

mony is not as clear and explicit as might be desired in some respects. They did not produce any detailed statement of the amount of lumber, pastering, roofing or otherwise, which will be required to rebuild this house and place it in substantially its former condition. However, they testify to having made an examination of the house, determined its then condition, the extent of which old material would have to be torn out and new material placed therein, and the amount of labor that would be involved in so doing. These witnesses made an estimate of loss or cost of repair varying from the sum of $2600.00 to $3200.00. The plaintiff also testifies upon this subject, giving his own knowledge and experience as to what it would cost to rebuild the house.

Some half a dozen witnesses were called upon the other side, one was an insurance adjuster, one, at least, was a building contractor, possibly two others, as is recalled, were real estate experts, men connected with some of the banks, experienced in valuing real estate, and their testimony went to the proposition of determining the value of this property before the fire and after the fire, in an effort to determine the loss occasioned by the fire. The proper scheme, however, would seem to be, from the policy, the necessary and proper expense of rebuilding the house and placing it in its former condition, it seeming to be conceded that it was feasible to so repair. The testimony of the witnesses called by the defendant insurance company indicated a loss or cost of repair of about $1500, some testimony indicating a greater loss, depending upon the value of the property. It is further in evidence in this case that one of the witnesses for the defendant who was a building contractor, and who perhaps was there as a result of some negotiations with the adjuster, offered to rebuild this dwelling for $1440.00, and the evidence suggests that the husband substantially agreed to that, with the understanding that for this sum the house would be made as good as before the fire, but on perhaps proper caution he would not sign the contract until he had consulted with his attorney, and perhaps some other person. As a result of such conference he declined to enter into an agreement for the repair of the building.

There is an allegation in the amended answer which perhaps I did not read, and that is to the effect that if otherwise liable, the damage to the building and subsequent liability of the insurance company, did not exceed $1440.00, which estimate was evidently based upon the offer of this contractor to so rebuild.

Now, we are confronted with this proposition in the consideration of this testimony, which I have somewhat briefly outlined, whether it can be said, as claimed by the insurance company, that the verdict of $2540.00 is grossly excessive and against the manifest weight of the evidence. The jury had superior opportunities for judging the weight to be given to this testimony. They saw and heard the witnesses, as did also the trial court. This court is not able to say, after considering this testimony, that there was not credible evidence tending to support the verdict, or in other words, this court can not say that this verdict was so against the decided or manifest weight of the evidence as to constitute prejudicial or reversible error.

We proceed now to another matter concerning which complaint is made, and that is that at the conclusion of plaintiff's testimony counsel for defendant insurance company moved the court for a view of the premises. Some objection was made to this by counsel for the plaintiffs, in view of the fact that the request had not been made before introduction of any evidence. The court took the matter under consideration and later overruled the motion. It is said that this was prejudicial error on the part of the trial court.

Attention is directed to **GC 11448**, which reads, in part, as follows:

"If of opinion that it is proper for the jurors to have a view of property, the subject of litigation, or of a place where a material fact occurred, the court may order them to be conducted in a body under the charge of an officer, etc."

This language is not by any means mandatory and the clear wording of this section would indicate an intention to invest a discretion in the trial court as to whether or not a view of the premises be allowed, and we do not feel that there was any abuse of discretion in this regard.

One other matter is complained of. On page 230 of the record Francisco Cucero, one of the plaintiffs below, was called for rebuttal. It may be suggested, perhaps I did speak of it before, the testimony introduced on the part of the insurance company as to the extent of loss was to a considerable extent based upon the value of the property before and after the fire, and

a large amount of testimony was offered in an attempt to show that this building was of a less value than it was insured for, and Cucero and his wife had also been accused of fraud and perjury in claming they had sustained a loss of $2920.00. Commencing on page 230 the following appears, questions by Mr. Maiden:

"Q Mr. Cuccero, at the time you were talking to the underwriting agent of the insurance company with reference to renewing the policy, I will ask you where that conversation was, at his office or at his home?

A He came over home and look for place.

Q What is that?

A He came over home and look for place and give me the card to go to the office and pay for it.

Q And gave you the card to go to the Ben Agler Insurance Company office and pay for the policy?

A Yes, sir.

Q What, if anything, did he say about increasing your insurance?"

There are some objections and discussions by counsel, and objection overruled, and the Court says:

"Go ahead.

Q Just what was said by him?

A He say the property look pretty big for small insurance like that, $3,000.

COURT: I didn't understand it.

A He said the property look so big and the policy calls for $3,000. He says I ought to have more than that."

Then later he says:

"A He want to put over a thousand dollars on it."

This testimony was objected to by counsel for the defendant insurance company and its admission is claimed to have been prejudicial. We do not think that this testimony was improperly admitted. It tended to indicate good faith on the part of Cuccero on the amount of insurance which he placed on the property, that he was urged by a representative of the company to carry an additional thousand dollars. It reflects not only on the value of the property but upon the mental attitude of the representative of the company itself in this respect, and tends to corroborate the insured's good faith and absence of false swearing in making out the proof of loss.

A considerable number of authorities were cited by counsel for the insurance company in an attempt to show that this testimony was incompetent, claiming that it was hearsay testimony. We do not understand it to have been hearsay, or think those authorities have any application to the issues. It is true that this representative was not disclosed in identity so far as his name was concerned. Evidently he was the man representing the company who came there to collect the premium upon the policy and whose conduct was recognized by the company.

This constitutes a somewhat brief consideration of those matters which are urged to be erroneous in the record, and we fail to find any prejudicial error in the record and the judgment is affirmed.

Farr, and Mauck, JJ, concur.